IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALICE ROSAS AGUILAR, as successor in interest to Sergio Rosas Aguilar; ALICE ROSAS AGUILAR, an individual,** ) ) ) ) ) | **CV F 08 - 1202 AWI GSA** <br><br> **PRETRIAL ORDER** |
| Plaintiffs, ) ) | **Motions In Limine Hearing:** <br>      **Monday, August 2, 2010** <br>      **1:30 p.m., Courtroom 2** |
| v. ) ) | **Trial:  Tuesday, August 10, 2010** |
| **COUNTY OF FRESNO, CALIFORNIA, a political subdivision of the State of California; ERNEST SERRANO, an individual,** ) ) ) ) ) | **      9:00 a.m., Courtroom 2** <br><br> **RULES OF CONDUCT** |
| Defendants ) ) ) | |

The pretrial conference was held on June 10, 2010.   The trial in this matter is set for August 10, 2010.  The parties currently estimate that the trial shall take six trial days.

**I.  Jurisdiction and Venue**

The Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 1367; and has venue in this action pursuant to 28 U.S.C. § 1391(b).  These matters are undisputed.

**II.  Jury Trial**

The parties have invoked their rights to a jury trial under the Seventh Amendment to the United States Constitution as to all triable issues.

## III.  Facts

### A.  Undisputed Facts

1. Deputy Serrano is a Fresno County Sheriff's Deputy and at the time of the May 17, 2008 shooting incident he was in the course of his employment.

2. The incident occurred on May 17, 2008, in the vicinity of Cedar and Central in Fresno County, State of California.

3. Sergio Rosas was shot by Deputy Ernest Serrano.

4. Mr. Rosas sustained five gunshot wounds, and died as a result of the gunshot wounds.

5. Alice Rosas Aguilar was the wife of the decedent.

### B.  Plaintiff's Disputed Factual Issues

(1)   **Excessive Force**

Was the force used by Deputy Serrano against the decedent excessive under the circumstances?

(2)   **Battery**

Did Deputy Serrano use unreasonable force against the decedent under the state law claim for battery?

(3)   **Negligence**

Was the conduct of Deputy Serrano in dealing with decedent negligent under the state law claim for negligence?

### C.  Defendants' Disputed Factual Issues

1. Whether the amount of force used by Deputy Serrano was legally justified.

2. Whether Sergio Rosas Aguilar was subjected to unreasonable search and seizure.

3. Whether Sergio Rosas Aguilar was subjected to battery.

4. Whether Deputy Serrano was negligent.

5. The nature and extent of Plaintiff's damages.

6.  The negligence of the decedent contributed to the incident.

7.  The negligence of other third parties contributed to the incident.

8.  Whether Deputy Serrano is entitled to qualified immunity.

**D.  Plaintiff's Disputed Evidentiary Issues**

(1)  Plaintiff disputes the admissibility of defense expert Dr. Mohandie's opinion that decedent committed "suicide by cop".  Plaintiff intends to file a motion in limine to exclude and/or limit Dr. Mohandie's testimony under Fed R. Evid 404 and 702, and under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

(2)  Plaintiff also disputes the admissibility of defense police practice expert Joe Callanan from testifying regarding statistics and/or studies of "suicide by cop" under Fed R.Evid 404 and Fed R.Evid 702.   Plaintiff intends to file a motion in limine seeking to exclude and limit testimony from Mr. Callanan and any opinions regarding "suicide by cop".

(3)  Plaintiff disputes the admissibility of decedent's prior arrests and/or criminal history under Fed R.Evid 404 and 702.  Plaintiff intends to a file a motion in limine seeking such exclusion.

(4)  Plaintiff disputes the admissibility of prior drug use by plaintiff or decedent under Fed R.Evid 404 and 702.  Plaintiff intends to file a motion in limine seeking such exclusion.

(5)  Plaintiff disputes the admissibility of any prior bad acts by decedent that were not known to Deputy Serrano at the time of the shooting based on the fact that the governing standard is "objective reasonableness" under Graham v. Connor, 490 U.S. 386 (1989).   Plaintiff intends to file a motion in limine seeking such exclusion.

(6)  Plaintiff intends to file a motion in limine to exclude Mr. Rosas immigration status, and the method of payment by Patrick Thomas for work performed by Mr.

1    Rosas.

2    **E.  Defendants' Disputed Evidentiary Issues**

3    Defendants anticipate that their pretrial motions in limine will include, but will not be

4    limited to the following:

5    1.    To preclude evidence whether defendants are insured.

6    2.    To preclude evidence concerning opinions of experts not properly designated by

7          plaintiff or experts who lack expertise regarding the subject matter to which they

8          have been designated to testify.

9    3.    To preclude plaintiff's counsel from making any inquiry, comment or argument

10         before the jury that suggests that jurors should base plaintiff's damages on an

11         amount that the jurors would charge to endure similar injuries.

12   4.    To preclude evidence that is protected by California Penal Code §832.7 and

13         §832.8,and California Evidence Code §1040 and §1043, and Deputy Serrano's

14         right to privacy.

15   5.    To preclude the use of documents, witnesses or other evidence not previously

16         disclosed to defendants during discovery.

17   6.    To bifurcate the issue of liability and punitive damages.

18   7.    To exclude any witnesses or documents not previously identified by plaintiff in

19         response to defendants' discovery requests and which should have been disclosed

20         pursuant to FRCP 26 or other applicable law.

21   8.    To exclude plaintiff's expert from offering legal opinions or opinion on the

22         credibility of witnesses or evidence.

23   9.    To exclude any claim of hedonic damages.

24   10.   Defendants reserve the right to file any other necessary motions in limine in

25         accordance with the schedule set by the court.

26

27

28                                     4

**F.  Plaintiff's Specific Factual Information**

**Date, Place, General Nature of Incident, Basis for Liability**

(1)     All claims stem from the contact with and the shooting of Sergio Rosas by Deputy Ernest Serrano on May 17, 2008, in the vineyard located in the vicinity of Cedar and Central in Fresno, California.  Plaintiff contends that the use of deadly force by Deputy Serrano was excessive and unreasonable under the circumstances. Plaintiff also alleges that the negligent actions and inactions by Deputy Serrano contributed to Mr. Rosas' death.

On May 17, 2008, Sergio and Alice were visiting with relatives (Willie Rocha and his wife Melinda), who lived at 4306 South Orange, Fresno, California.   Sergio and Alice lived across from Willie and Melinda in a mobile home where they had been living for the past 5 to 6 years.   Sergio and Alice were having a nice family day and Sergio was in a very happy mood.  Sergio had promised Mamie Rocha (Alice's mother) that he was going to cook for her the next morning.  At approximately 8:30 p.m. or 9:00 p.m., Sergio left to go to a nearby grocery store.   It was common practice for Sergio to irrigate the vineyards at night.  Sergio would park his truck by the vineyards and sit in his truck as the vineyards were getting watered.  When Sergio did not immediately return from the store, Alice believed that he had stopped to irrigate the vineyards.   Alice never saw Sergio carry a pocket knife or folding knife.

Deputy Serrano was responding to a 911 call regarding a "suspicious" vehicle.  When Deputy Serrano spoke with the reporting party, Raymond Felix, Mr. Felix reported in the past seeing people "party" in the area where the suspicious vehicle was located.   Based on this information, Deputy Serrano could expect to encounter more than one person.  The dispatch recording confirms that Deputy Burk was en route to the 911 call and a short distance away from arrival.

5

Based on the vague description of the call, the fact that Deputy Serrano could expect to encounter more than one person, the secluded and dark area where the truck was parked, Deputy Serrano should have waited for Deputy Burke's arrival before attempting any contact with Mr. Rosas.

There are conflicting versions given by Deputy Serrano regarding Mr. Rosas' actions.  In an original statement,  Deputy Serrano stated that Mr. Rosas took a few steps toward him when he opened fire.   At deposition, when providing the sequence of events, Deputy Serrano testified that when Mr. Rosas exited his truck, he ran and advanced toward him.   At the scene, Deputy Burk testified that when he arrived to the scene, Deputy Serrano told him that Rosas put his hat on top of the truck, reached inside, and then came at him.

The dispatch recording provides a timeline for the critical events as follows:

7:23    Deputy Serrano communicates with dispatch to request that the truck's plates be run

7:29    Dispatch communicates vehicle ownership on plates

7:33    Serrano broadcasts that he has "one at gunpoint"

7:40    Serrano broadcasts "shots fired"

The shooting of Mr. Rosas occurred within just 11 seconds after Deputy Serrano received the results of the plates, and only 7 seconds after he communicates that he had "one at gunpoint".   The actions and communicates as described by Deputy Serrano in his statement and deposition could not have occurred within 11 seconds.

Deputy Serrano testified at deposition that he was 30-35 feet away when Mr. Rosas stuck his hands outside the door and Serrano ordered him to stay inside the truck.   Serrano testified that Mr. Rosas was inside the truck when he made the broadcast that he had "one in vehicle".  He testified that he was approximately 30

6

to 35 feet away from Mr. Rosas when Mr. Rosas came out of his truck with a knife.   After he saw Rosas with a knife, Serrano was narrowing the distance to get a better view.   Deputy Serrano further testified that Mr. Rosas came out of his truck with a beer in one hand and a knife in the other hand.   Deputy Serrano testified that Mr. Rosas started running and advanced to a distance of 10 feet from him when he fired.   Deputy Serrano stated that Mr. Rosas got within 10 feet of Serrano when he shot him.   Deputy Serrano testified that he fired all five rounds from the same position.   Deputy Serrano testified that Mr. Rosas' body partially came to rest underneath the truck after he was shot.   Deputy Serrano testified that he had to pull Mr. Rosas out from underneath his truck to give him CPR after the shooting.

Mr. Rosas was not a fleeing felon.   Mr. Rosas had not committed any crime when he was encountered by Deputy Serrano.   Plaintiff contends that Deputy Serrano acted recklessly in his approach of Mr. Rosas and his use of deadly force was precipitated by his own actions.

(2)   Plaintiff Alice Rosas Aguilar is 48 years old.  She is seeking wrongful death damages and survival damages.

(3)   Decedent Sergio Rosas was 41 years old and in general good health.  Decedent was not diagnosed with any illness that would have materially affected his life expectancy.

## G.  Defendants' Specific Factual Information

1.   **Date, Place, General Nature of Incident, Basis for Liability, Defense**

On the morning of May 17, 2008, Sergio Rosas Aguilar ("Mr. Aguilar" or "the Decedent") went to work in the vineyards, where he also lived.  He returned from work around 11:30 a.m. and began drinking beer.  He continued drinking throughout the day with other family members.  Later in the evening, Mr. Aguilar

drove to the store to buy more beer.  Mr. Aguilar liked to sit in the vineyards alone and drink.

According to one of Plaintiff's daughters, Plaintiff was a drug addict and was depleting the family finances because she would spend the family's money to buy drugs.  Plaintiff's drug addiction caused Mr. Aguilar a great deal of stress and according to the daughter, he had contemplated suicide in the past.

Deputy Serrano is a Fresno County Sheriff Deputy and at the time of the May 17, 2008 shooting incident he in the scope of his employment.  On that night, Raymond Felix placed a call to 9-1-1 to report a suspicious vehicle entering the vineyard behind his home and Deputy Serrano was dispatched to respond to that call in the area of Central and Cedar Avenues.

When he arrived at the area, Deputy Serrano was flagged down by Mr. Felix who told Deputy Serrano that he had placed the 9-1-1 call to report a suspicious vehicle entering the vineyard and he showed Deputy Serrano the dirt road that vehicle used to enter the vineyard.  Prior to this incident, Mr. Felix had seen people going into the vineyard for unknown reasons and he advised Deputy Serrano that people regularly entered the area to party.  After speaking with Mr. Felix, Deputy Serrano entered the vineyard to investigate the matter.

After proceeding a short distance down the dirt road, Deputy Serrano encountered a dark colored truck.  He illuminated the truck with his patrol car's driver side spotlight and called out the license plate number to dispatch.  As he was communicating with dispatch, Deputy Serrano realized that the truck was occupied so he got out of his patrol car and identified himself as a law enforcement officer.  Deputy Serrano then ordered the occupant,  Sergio Rosas Aguilar, to remain inside his vehicle, but Mr. Aguilar opened the door to his truck and stuck his hands outside of the truck.  Mr. Aguilar pulled his hands back into

8

the truck and Deputy Serrano ordered him to show his hands but Mr. Aguilar instead exited the truck holding a knife in his right hand.  Deputy Serrano ordered Mr. Aguilar to drop the knife.   Deputy Serrano pointed his service weapon at Mr. Aguilar and broadcast that he had one at gunpoint.  Mr. Aguilar was again ordered to drop the knife and he yelled out words to the effect of "You're going to have to fucking kill me!" and quickly advanced toward Deputy Serrano.

Deputy Serrano believed that Sergio Rosas Aguilar was going to cause him serious injury or possibly kill him.  Mr. Aguilar was approximately 10 feet away from Deputy Serrano when he responded to the threat by firing 5 rounds at Mr. Aguilar until he stopped advancing on him.  Mr. Aguilar stumbled backwards and fell to the ground next to the pick-up.  Deputy Serrano immediately requested emergency medical assistance and began performing cardiopulmonary resuscitation on him until the emergency medical services ("EMS") arrived.  EMS pronounced Mr. Aguilar dead at the scene.  A knife was found at the scene of the shooting within a few feet of Mr. Aguilar's feet.

At the time of the shooting incident, the land that included the vineyard and the mobile home where the Plaintiff and Mr. Aguilar lived was owned by Pat Thomas.

## IV.  Relief Sought

**Plaintiff**

1.      Compensatory damages

2.      Survival damages

3.      Wrongful death damages

4.      Funeral and burial expenses

5.      Punitive damages

6.      Attorney's fees and costs

Plaintiff claims compensatory and survival damages on behalf of decedent for his pain and suffering before death, a separate sum to compensate decedent for his loss of enjoyment of life, that is for the deprivation of decedent's rights to life without due process of law.  See, *Guyton v. Phillips*, 532 F.Supp.1154, 1166, 1169 (N.D. Cal.1981), *rev'd in part on other grounds*; 606 F.2d 248 (9th Cir. 1979); accord *Bell v. City of Milwaukee*, 746 F.2d 1205, 1234-1240 (7th Cir. 1984); *Sherrod v. Berry*, 827 F.2d 195, 205 (7th Cir. 1987) *affirming* 629 F.Supp 159 (N.D. Ill. 1985).

Plaintiff claims compensatory damages for the loss of love, companionship, affection, care, assistance, comfort, society, and moral support from decedent.  All other enumerated relief sought is self explanatory.

**Defendants**

Defendants seek a defense verdict, costs and attorney's fees for defense of this action.

**V.  Points of Law**

**A.  Plaintiffs' Contentions**

The central issue in this case is whether the shooting of Sergio Rosas was objectively reasonable under the circumstances.   Whether Deputy Serrano was justified in using deadly force must be viewed in light of the objective factors present at the time of the shooting not based upon his subjective fear.

The reasonableness of a seizure, including the use of force to arrest, is determined by "'careful[ly] balancing . . . the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'"  Graham v. Connor, 490 U.S. 386, 396 (1989) (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)).  In Garner, the Supreme Court held with respect to the intrusion of Fourth Amendment interests: "The intrusiveness of a seizure by means of deadly force is unmatched. The suspect's fundamental interest in his own life need not be elaborated upon.  The use of deadly force also frustrates the interest of the individual, and of society, in judicial determination of guilt and

1    punishment." Id. at 9.

2        In Graham v. Connor, the Supreme Court held that police officers may only use force that

3    is objectively reasonable.   In Graham, the Supreme Court lists as the relevant factors for

4    determining the reasonableness of a police use of force: "[1] the severity of the crime at issue, [2]

5    whether the suspect poses an immediate threat to the safety of the officers or others, and [3]

6    whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396.

7    Moreover, in addition to the three Graham factors, "the availability of alternative methods of

8    capturing or subduing a suspect may be a factor to consider." Smith v. City of Hemet, 349 F.3d

9    689, 701 (citing Chew v. Gates, 27 F.3d 1432, 1441 n.5 (9th Cir. 1994)).   Thus, an

10   excessive-force plaintiff may establish "there were alternative techniques available for subduing

11   him that presented a lesser threat of death or serious injury" by submitting "'an expert declaration'

12   to show whether the officers' conduct comported with law enforcement standards." Id.

13       With respect to Plaintiff's state law claim for battery, this claim is a counterpart to a

14   federal claim of excessive force.   In both, a plaintiff must prove that the peace officer's use of

15   force was unreasonable.   Munoz v. City of Union City, 120 Cal. App. 4th 1077, 1102 n.6 (2004).

16   With respect to Plaintiff's negligence claim, under established law, police officers have a duty "to

17   use reasonable care in deciding to use and in fact using deadly force." Brown v. Ransweiler, 171

18   Cal. App. 4th 516, 534 (2009); Munoz, 120 Cal. App. 4th at 1101.   More specifically, an

19   "officer's lack of due care can give rise to negligence liability for the intentional shooting death of

20   a suspect." Brown, 171 Cal. App. 4th at 534; Munoz v. Olin, ("Olin") 24 Cal. 3d 629, 634

21   (1979).   Defendants also are liable for their negligent tactical decisions that immediately

22   preceded and precipitated the shooting.   Grudt v. City of Los Angeles, 2 Cal. 3d 575, 587 (1970);

23   Olin, 2 Cal. 3d at 634.   As to Plaintiffs' negligence claim against the County, it is premised on a

24   theory of respondeat superior liability for Serrano's negligent acts while in the course and scope

25   of his employment, pursuant to California Government Code § 815.2(a).   See Blankenhorn, 485

26   F.3d at 488 ("This provision clearly allows for vicarious liability of a public entity when one of

27

28                                      11

its police officers uses excessive force in making an arrest.").

**B. Defendants' Contentions**

Deputy Serrano Did Not Violate Decedent's Fourth Amendment Rights

Plaintiff's First Cause of Action is for a violation of the right of Decedent to be free from unreasonable search and seizure.

**1.      Deputy Serrano's Use of Force Was Objectively Reasonable**

Plaintiff has alleged that Deputy Serrano's use of force was "without legal justification and without a reasonable belief that the use of deadly force was necessary to protect Deputy Serrano or anybody else from an imminent risk of great bodily harm or death," and that this use of excessive force violated the Decedent's Fourth Amendment rights.

"[A]ll claims that law enforcement officers have used excessive force deadly or not in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard." Graham v. Connor, 490 U.S. 386, 395 (1989).   The excessive force claim must be evaluated to determine whether the officer's actions were 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.  Id., at 396-397.

The use of deadly force is reasonable only if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others. Tennessee v. Garner, 471 U.S. 1, 11 (1985).  The court is required to determine whether the shooting was objectively reasonable in light of the facts and circumstances confronting Deputy Serrano "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, supra, 490 U.S. at 396.

Here, Deputy Serrano was in close quarters with an individual who yelled out threatening words, raised a knife and quickly advanced toward him in complete disregard for the orders he was given to drop the knife he was holding.  As such, Deputy Serrano reasonably interpreted the Decedent's actions as a deadly threat against his person.  Due to Decedent's close proximity, he

12

1   reasonably believed that  Decedent would be able to complete the threatened attack on him if he

2   did not act.  In Smith v. City of Hemet, 394 F.3d 689 (9th Cir. 2005), the Ninth Circuit held that

3   it is objectively reasonable for an officer to use deadly force "where a suspect threatens an officer

4   with a weapon such as a gun or a knife." Id., at 704.  In Reynolds v. County of San Diego, 84

5   F.3d 1162, 1168 (9th Cir. 1996) , the Ninth Circuit held that deadly force was used reasonably

6   when a suspect swung a knife at an officer, and he was behaving erratically. Given the facts and

7   circumstances of this incident, Deputy Serrano was objectively reasonable in responding with

8   deadly force.

9       Plaintiff contends that there were alternatives available to Deputy Serrano.  However, it is

10  well-established that the only question is the reasonableness of the force, not whether a less

11  intrusive alternative was available.  See Scott v. Henrich, supra, 39 F.3d 912, 915 (9th Cir.

12  1994); Forrester v. City of San Diego, 25 F.3d 804, 807-808 (9th Cir. 1994).  In this case, there is

13  no evidence to dispute that Decedent presented an immediate threat of death or serious bodily

14  injury to Deputy Serrano.  Under Graham v. Connor, it is important to "never allow the

15  theoretical, sanitized world of our imagination to replace the dangerous and complex world that

16  policemen face every day." Smith v. Freland, 954 F.2d 343, 347 (6th Cir. 1992).  While Plaintiff

17  may submit an opinion from her expert witness, "(w)hat constitutes 'reasonable' action may seem

18  quite different to someone facing a possible assailant than to someone analyzing the question at

19  leisure." Id.

20   Plaintiff contends that Deputy Serrano ignored his training and took unnecessary risks in

21  approaching Decedent; thereby placing himself in a position of danger.  Such conduct is not

22  relevant to the Fourth Amendment claim because the conduct would not deprive Deputy Serrano

23  of his right to defend himself from the threat that he faced at the time he engaged in the

24  questioned use of force.  See, Billington v. Smith, 292 F.3d 1177, 1190 (9th Cir. 2002).

25  In Billington, an off-duty police officer was driving in his unmarked police car with his wife and

26  daughter when they came upon an individual who was speeding, driving erratically, and nearly

27

28                                          13

1    caused an accident.  After the officer activated his police siren, the driver shut off his headlights

2    to keep out of the officer's view, and then crashed.  The officer had radioed for backup, and

3    advised dispatch of his approximate location when he approached the vehicle to render any

4    necessary first aid.   The officer was subsequently attacked by the driver, who attempted to gain

5    control over the officer's gun and who was getting the upper hand when the officer fired his

6    weapon.  The Plaintiff's expert opined that the officer made tactical errors prior to approaching

7    the vehicle and that in doing so he created the situation and the need to use deadly force.

8    However, the Ninth Circuit held that pre-arrest tactics that provoke a violent response and

9    subsequent use of lethal force are actionable only if they are either reckless or intentional, and are

10   in and of themselves a constitutional violation.  Id., at 1190-1191.

11        In this case, there simply is no evidence of a reckless or intentional provocation.  Deputy

12   Serrano has a reasonable suspicion that a person was trespassing on private property, and he was

13   duty-bound to investigate the matter.  There is no evidence that Deputy Serrano did anything

14   during the brief encounter to provoke Decedent into approaching him with a knife.  Therefore,

15   any alleged tactical negligence on Deputy Serrano's part is irrelevant to the Fourth Amendment

16   analysis.

17        **2.    Deputy Serrano is Entitled to Qualified Immunity**

18   Qualified immunity protects Section 1983 defendants "from liability for civil damages insofar as

19   their conduct does not violate clearly established statutory or constitutional rights of which a

20   reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "As the

21   qualified immunity defense has evolved, it provides ample protection for all but the plainly

22   incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341

23   (1986).

24        The threshold question which a court must consider in ruling upon the defense of

25   qualified immunity is, "[t]aken in the light most favorable to the party asserting injury, do the

26   facts alleged show the officer's conduct violated a constitutional right?"  Saucier v. Katz, 533

27

28                                        14

1  U.S. 194, 201 (2001).  If the Plaintiff's factual allegations establish a violation of the Plaintiff's

2  federal rights, then the court must proceed to the second determination as to whether the right

3  was "clearly established."  Id.;  Devereaux v. Abbey, 263 F.3d 1070, 1074 (9th Cir. 2001).

4          As for the first question, as set forth above, the evidence does not show that Deputy

5  Serrano violated the Decedent's Fourth Amendment rights.  Deputy Serrano, while holding his

6  service weapon, commanded Decedent to drop the knife several times.  As Decedent failed to

7  comply, and quickly advanced toward Deputy Serrano, the use of deadly force was objectively

8  reasonable as a matter of law.  See Robbins v. City of Hanford, 2006 WL 1716220, p. 15 (E.D.

9  Cal. 2006); and Reynolds v. County of San Diego, supra at 1168.

10         In Blanford v. Sacramento County, 406 F.3d 1110 (9th Cir. 2005), deputy sheriffs shot a

11  man who brandished a sword, growled at the deputies, and attempted to enter the backyard of a

12  private residence, after deputies warned the man to drop the sword.  Id., at 1112-1114.  The

13  district court granted summary judgment on the basis of qualified immunity, and the Ninth

14  Circuit affirmed, making the holding the following:

15          "It follows that the deputies are entitled to qualified immunity. Even if we have
16          misjudged the constitutional issue, neither Supreme Court nor circuit precedent in
            existence as of November 13, 2000 would have put a reasonable officer in the
            deputies' position on notice that using deadly force in the particular circumstances
17          would violate his Fourth Amendment rights."

18          Blanford's holding is applicable to this case.  Deputy Serrano had a reasonable belief that

19  his life was in immediate jeopardy because the Decedent was ignoring his commands to drop the

20  knife, because his words indicated that he was not going to comply with Deputy Serrano's

21  commands and because he advanced at him while raising the knife.  The case authority up to

22  May 17, 2008, clearly indicates that an officer may use deadly force if he or she reasonably

23  believes that the suspect poses an immediate risk of causing death or serious bodily injury to him

24  or another.  See Brosseau v. Haugen, 543 U.S. 194, 197 (2004).  Deputy Serrano could not have

25  known his actions were violating Decedent's  constitutional rights because he reasonably believed

26  that the Decedent intended to cause him great bodily harm and he had the apparent ability to do

27

28                                              15

1  so.

2  **3.     Plaintiff's State Law Claims Are Not Actionable Because the Use of**

3  **Force Was Objectively Reasonable**

4       As set forth above, Plaintiff has brought survival actions for battery and negligence.

5  Plaintiff has also brought a separate wrongful death action, contending that Decedent's death was

6  caused by the wrongful act or neglect of Deputy Serrano.  However, because the force used by

7  Deputy Serrano was objectively reasonable as a matter of law, none of these claims are

8  actionable.

9       Where a law enforcement officer is being sued for battery, the plaintiff must prove

10  unreasonable force as an element of the tort.  Edson v. City of Anaheim, 62 Cal.App.4th 1269,

11  1272 (1998).  With regard to state law causes of action, an officer's use of deadly force is

12  privileged as a matter of law if he reasonably fears for his safety or that of others in the area.

13  People v. Rivera, 8 Cal.App.4th 1000, 1007 (1992); see also Gilmore v. Superior Court, 230

14  Cal.App.3d 416, 422 (1991).

15       The elements of negligence are: (1) a legal duty to conform to a standard of conduct to

16  protect the plaintiff; (2) failure to meet this standard of conduct; (3) the failure was the proximate

17  or legal cause of the resulting injury; and (4) the plaintiff was damaged.  Ladd v. County of San

18  Mateo, 12 Cal.4th 913, 917 (1996).   In the First Amended Complaint, Plaintiff specifically

19  pleads that "(a) police officer has a duty to use reasonable care in employing deadly force."  It is

20  true that a police officer's excessive force can give rise to negligence liability.  See Munoz v. City

21  of Union City, 120 Cal.App.4th 1077, 1094 (2004); Edson v. City of Anaheim, supra, 63

22  Cal.App.4th at 1272-1274.  However, as discussed above, it cannot be concluded that Deputy

23  Serrano failed to use reasonable care in employing deadly force against Decedent.

24  Plaintiff contends that Deputy Serrano was negligent in approaching Decedent's truck in the

25  manner that he did.  However, in California, police officers responding to public safety

26  emergencies, and whose efforts prove ineffective, owe no duty of care with respect to their

27

28                                                16

decisions as to how to deploy officers, the efforts made to defuse the situation safely, and other factors preceding the use of force. See Munoz v. City of Union City, supra, 120 Cal.App.4th at 1094, 1097-1098.  The Eastern District has held that Munoz establishes that a negligence claim is not actionable if it is "based on tactical decisions preceding the use of deadly force."  Rosales v. City of Bakersfield, 2007 WL 1847628, p. 32 (E.D. Cal. 2007).

The County of Fresno is named as an additional defendant. However, the County of Fresno is only liable vicariously for the conduct of Deputy Serrano that was within the scope of his employment.  The County cannot be held liable for any claim of its own negligent conduct or omission.  Munoz v. City of Union City, supra. 120 Cal.App.4th at pg.1111.

     4.     Punitive Damage Claims

 Plaintiff has made a claim for punitive damages against the Deputy Serrano.  Punitive damages are only proper under 42 U.S.C. §1983 when the Defendant's conduct is shown to be motivated by evil motive or intent or when it involves a reckless or callous indifference to the federally protected rights of others.  Smith v. Wade, (1983) 461 U.S. 30, 56.  There are no facts or evidence in this case which would support such a claim.

## VI.  Abandoned Issues

Defendants have been informed as believe that Plaintiff has abandoned her wage loss claim, as well as her claims for arrest without probable cause and her second cause of action for inadequate training by the County of Fresno.  Further, the Court granted Defendant's Motion for Summary Adjudication as to the Plaintiff's Monell claim.

## VII.  Witnesses

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses.  NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(10).

**A.  Plaintiffs' Witnesses**

Deputy Ernest Serrano (Defendant)

Deputy Todd Burke, Fresno County Sheriff's Department

Raymond Felix, 121 West North Avenue, Fresno, CA

Sergio Toscano, Fresno County Sheriff's Department

Jaime Loredo, Fresno County Sheriff's Department

Joel Wahlenmaier, Fresno County Sheriff's Department

Hector Palma, Fresno County Sheriff's Department

Cathy Graham, Fresno County Sheriff's Department

Mary Tigh, Fresno County Sheriff's Department

Vicente Guerrero, Fresno County Sheriff's Department

Andres Solis, Fresno County Sheriff's Department

Tim Rivera, Fresno County Sheriff's Department

Courtney Williams, Fresno County Sheriff's Department

Michelle Parfitt, Fresno County Sheriff's Department

Britney McAllister, 449 E. Lester Ave., Fresno, CA

Jessica Rodriguez, 2124 Arden Drive, Fresno, CA

Michael Chambliss, M.D., Forensic Pathologist, Fresno County Coroner's Office

Roger Clark, Plaintiff's Police Practice Expert

Alice Rosas Aguilar, (Plaintiff)

Erica Sustaita Demetrio, 3855 East Hampton Way, Fresno, CA

Tony Sustaita, 3004 E. White, Fresno, CA

Gloria Sustaita Medina, 4409 E. Hedges, Apt. E, Fresno, CA

Guillermo (Willie) Sustaita, 921 North Peach Avenue, Fresno, CA

Willie Rocha, 4306 S. Orange Ave., Fresno, CA

Melinda Rocha, 4306 S. Orange Ave., Fresno, CA

18

1   Maime Rocha, 4306 S. Orange Ave., Fresno, CA

2   Mary Rocha, 4306 S. Orange Ave, Fresno CA 93725

3   Joe Medina, 340 N. Clark, #A, Fresno, CA

4   Christina Rodriguez, 2988 East Princeton Ave., Fresno, CA

5   Patrick Thomas, 1783 West Celeste, Fresno, CA

6      **B.  Defendants' Witnesses**

7   In addition to the witnesses identified by plaintiff, defendants intend to call the following

8   witnesses:

9   1.      All witnesses whose depositions were taken.

10  2.      All witnesses identified in the parties' Rule 26 Initial Disclosures.

11  3.      All witnesses identified in the parties' discovery responses.

12  4.      Any news reporters (identities are currently unknown) who interviewed anyone

13  concerning the subject incident.

14     **Defendants' Non-Expert Witnesses**

15  Castro, Connie; 14566 E. Mono Avenue, Fresno CA

16  Cerda, Angie; Fresno CA

17  Coronado, Stephanie Ann; address unknown.

18  Demetrio, Erica; 3855 East Hampton Way, Apartment 102, Fresno CA 93726

19  Demetrio, Moices; 3855 East Hampton Way, Apartment 102, Fresno CA 93726

20  Felix, Raymond; 121 West North Avenue, Fresno CA 93706.

21  Figueroa, Maria; 4199 S. Cedar Ave., Fresno CA 93725

22  Figueroa, Ruben;  4199 S. Cedar Ave., Fresno, CA 93725

23  Flores, Adam; 1243 E. Lansing Way, Fresno CA 93704

24  Garcia, Frank; 4028 S. Orange, Fresno CA 93725

25  Green, Jacob; Bulldog Towing

26  Lopez, Melinda; 4306 S. Orange, Fresno CA 93725

27

28                  19

1   Medina, Gloria; 4409 East Hedges, Apartment E., Fresno, CA 93703

2   Medina, Joe; 340 N. Clark, #A; Fresno, CA 93701

3   Navarro, David F; address unknown

4   Ramirez, G.; Bauer's Auto Wrecking, 103 N. Thorne Ave., Fresno, CA 93722

5   Rocha, Dominga; 719 Mayor Ave, Fresno, CA 93706

6   Rocha, Maime; 4306 S. Orange Ave, Fresno CA 93725

7   Rocha, Mary; 4306 S. Orange Ave, Fresno CA 93725

8   Rocha, Salvador; 1151 South Chestnut Avenue, Apt. 103, Fresno, CA

9   Rocha, Willie; 4306 S. Orange Ave, Fresno CA 93725

10  Rodriguez, Christina; 1418 Shields Ave., Fresno, CA 93704, 559-974-3951

11  Serrano, Ernest (Defendant)

12  Stokes, Doug; P.O. Box 441, Clovis CA 93613; 559-392-5742

13  Sustaita, Tony; 3004 E. White, Fresno, CA 93701

14  Sustaita, Marie F.; 4306 S. Orange Ave, Fresno, CA 93725

15  Sustaita, Willie; 921 North Peach Avenue, Fresno

16  Thomas, Jason; 2037 W. Bullard #185, Fresno CA 93711

17  Thomas, Patrick; 1783 West Celeste, Fresno, CA 93711

18  Whalen, Evonne L.; Bulldog Towing

19          **Defendants' Non-Retained Expert Witnesses**

20  Armstrong, Pamela (LVN); Fresno County Behavioral Health

21  Bewley, James (Deputy); Fresno County Sheriff's Department

22  Biggs, Lisa (Sr. Investigator); Fresno County District Atty. Office

23  Blohm, Joseph (Lt.); Fresno County Sheriff's Department

24  Bowman, James (LCSW); Fresno County Behavioral Health;

25  Burk, Todd (Deputy); Fresno County Sheriff's Department

26  Bustos, Carla (Registered Nurse); Fresno County Behavioral Health

27

28                                    20

1  Caldera, Scott (Sgt.); Fresno County Sheriff's Department

2  Chambliss, M.D.; Michael; Forensic Pathologist, Fresno County Coroner's Office

3  Cross, A. (CMHSII); Fresno County Behavioral Health

4  DeFehr, C. (LVN); Fresno County Behavioral Health

5  De Joseph, Dorothy T. (LMFT); Fresno County Behavioral Health

6  Dorian, Christopher (Deputy DA); Fresno County District Attorney's Office

7  Falls, Glen, (Detective) Fresno County Sheriff's Department

8  Fraley, D.; Fresno County Fire Department

9  Gattie (Deputy), Brad; Fresno County Sheriff's Department

10  Gay, Jeffra (LCSW); Fresno County Behavioral Health

11  Gentry, Jeff; Fresno County Coroner's Office

12  Georgeson, R; Fresno County Fire Department

13  Goddard (Sgt.); California Highway Patrol

14  Graham, Cathy; Fresno County Sheriff's Department

15  Guerrero, Vincent; Fresno County Sheriff's Department

16  Gunderson, Blake; Fresno County District Attorney's Office

17  Hadden, M.D., David; Fresno County Coroner,760 W. Nielsen, Fresno, CA 93706

18  Halvorson, G. Badge No. 15890; California Highway Patrol

19  Heckman, Randall (Deputy investigator); Fresno County Sheriff's Department

20  Hernandez, Louis (Lt.); Fresno County Sheriff's Department.

21  Hernandez, Robin (Communications Supervisor); Fresno County Sheriff's Department

22  Holt, N.; Fresno County Fire Department

23  Kemp, Peter (LMFT); Fresno County Behavorial Health

24  Jenn A. Kearney; Mineral King Laboratory,  880 E. Merritt Ave., Ste. 108,

25  Tulare, CA 93274

26  King, Michael (Deputy); Fresno County Sheriff's Department

27

28                                    21

1  Koop, Michael (Deputy Director); Fresno County Sheriff's Department

2  Loredo, Jaime (Deputy); Fresno County Sheriff's Department

3  Lucas, Rod (Sgt.); Fresno County Sheriff's Department

4  Marean, Robert (Deputy); Fresno County Sheriff's Department

5  C. Martorana, Badge No.15903; California Highway Patrol

6  Matyschock (Officer); California Highway Patrol

7  Mayberry, Daisy; Fresno County Behavioral Health

8  McCalister, Britney; American Ambulance

9  McVeigh, Sandra L.; Mineral King Laboratory, Tulare, CA 93274

10  Montgomery, Cory (Deputy); Fresno County Sheriff's Department

11  Muller, M; Fresno County Fire Dept

12  Oh, Patrick; (Sr. Investigator), Fresno County District Atty. Office

13  Palma, Hector (Detective); Fresno County Sheriff's Department

14  Parfitt, Michelle (Deputy); Fresno County Sheriff's Department

15  Phanvong, Irene; Fresno County Behavioral Health

16  Rackley, R., Fresno County Sheriff's Department

17  Rasmussen, Janice (Lt.); Fresno County Sheriff's Department

18  Rein, Toby (Lt.); Fresno County Sheriff's Department

19  Rivera, Juan (Deputy); Fresno County Sheriff's Department

20  Rivera, Timothy (Deputy); Fresno County Sheriff's Department

21  Rodriguez, Jessica; 2124 Arden Drive Fresno, CA 93703, 559-458-9245

22  Rusche, Robert (Deputy); Fresno County Sheriff's Department

23  Solis, Andres (Deputy); Fresno County Sheriff's Department

24  Tello, Hector; Fresno County Sheriff's Department

25  Terrence, Arley (Sgt.); Fresno County Sheriff's Department

26  Throckmorton, Shawn; (Deputy) Fresno County Sheriff's Department

27

28                                    22

1   Tigh, Mary (I.B. Supervisor); Fresno County Sheriff's Department

2   Toscano, Sergio (Deputy); Fresno County Sheriff's Department

3   Trevino, David; Fresno County District Attorney's Office

4   Trushel, Jeff; Fresno County District Attorney's Office

5   Urbina, Jorge; Fresno County Behavioral Health

6   Wiefel, Kelly; Deputy Coroner; Fresno County; 760 W. Nielsen, Fresno, CA 93706

7   Wilkins  (Lt.); Fresno County Sheriff's Department

8   Williams, Courtney (Deputy); Fresno County Sheriff's Department

9   Wisemer, Victor (Lt.); Fresno County Sheriff's Department

10  Womble, Foster (Sgt.); Fresno County Sheriff's Department

11  Vargas, Ashley; Fresno County Sheriff's Department

12  Zanoni, John (Lt.); Fresno County Sheriff's Department

13          **Defendants' Retained Expert Witnesses**

14      1.      Joseph Callanan

15              Specialized Training Consultants

16              430 Quintana Road - PMB 154

17              Morro Bay, CA  93442

18      2.      Kris Mohandie, PH.D.

19              Licensed Psychologist

20              P.O. Box 88

21              Pasadena, California 91102-0088

22

23  **VIII.  Exhibits**

24          The following is a list of documents or other exhibits that the parties expect to

25  offer at trial.  NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE

26  ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS

27

28                                  23

ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(11).

### A.  Plaintiffs' Exhibits

Plaintiff files a separate exhibit list at Document # 110.  The contents of the list are incorporated here by reference in their entirety.  The exhibit list set forth at Document # 110 contains the entire and exclusive list of Plaintiff's exhibits.

### B.  Defendants' Exhibits

In addition to exhibits identified by plaintiff, defendant may introduce the following exhibits.

1.      Fresno County Sheriff's Department Report No. 08-12245, including any photographs, supplemental and follow up reports;

2.      Audio of Radio Traffic;

3.      Print out of Radio Traffic;

4.      Toxicology Reports from Mineral King Laboratory;

5.      Fresno County Coroner's report;

6.      Media broadcast CDs concerning the subject incident;

7.      Curriculum Vitae of Defendants' expert, Joseph Callanan;

8.      Curriculum Vitae of Defendants' expert, Kris Mohandie;

 9.      Curriculum Vitae of Defendants' non-retained experts;

10.      Criminal files relating to the Decedent from Fresno County Sheriff's Department;

11.      Criminal files relating to Plaintiff from Fresno County Superior Court;

12.      Fresno County Sheriff's Department Shooting Policy in effect on the date of the subject incident;

13.      All physical evidence relating to incident (knife, clothing, etc.).

Defendants reserve the right to supplement this list.

### IX.  Discovery Documents To Be Used At Trial (Answers To Interrogatories And Responses To Requests For Admissions

24

1        **Defendants**

2    Defendants intend to introduce the following discovery:

3        1.      All depositions taken in this action including exhibits:

4                Alice Aguilar (Vol 1 & 2 - including video)

5                Roger Clark

6                Erica Demetrio (Vol. 1 & 2)

7                Adam Flores

8                Gloria Medina (Vol. 1 & 2)

9                Joe Medina

10               Maime Rocha

11               Mary Rocha

12               Salvador Rocha

13               Willie Rocha

14               Christina Rodriguez (Vol. 1 & 2)

15               Marie Sustaita (Vol. 1 & 2)

16               Tony Sustaita

17               Willie Sustaita

18               Ernest Serrano

19               Todd Burk

20                Roger Clark

21               Raymond Felix

22               Jessica Rodriguez

23               Britney McAlister

24               Patrick Thomas

25               Peter Kemp

26       2.      Interrogatories served on Plaintiff and Plaintiff's responses (all sets and

27

28                                           25

1     supplements/amendments);

2    3.    Requests for admissions served on Plaintiff and Plaintiff's responses; (all sets and

3     supplements/amendments);

4    4.    Request for documents served on Plaintiff and Plaintiff's responses (all sets and

5     supplements/amendments)

6    5.    All records received via subpoena or signed authorization, including records from

7     Patrick Thomas relating to the Decedent and records from Fresno County

8     Behavioral Health relating to Plaintiff.

9    6.    All other documents produced by plaintiff during discovery, including documents

10     for which any claims of privilege have been waived.

**X.  Further Discovery or Motions**

    **Defendants**

Defendants do not anticipate any further discovery.  Defendants intend to file motions in limine.

**XI.  Stipulations**

The parties stipulate to the following:

   1.    Deputy Serrano was acting under color of law at the time of the incident.

   2.    Deputy Serrano was in the course and scope of his employment with Fresno

    County Sheriff's Department at the time of the incident.

**XII.  Amendments/Dismissals**

None

**XIII.  Settlement Negotiations**

A settlement conference was scheduled, however, it was vacated pending the completion of discovery.  It has not been rescheduled.  The Plaintiff prayed for $10 million in her First Amended Complaint.  There have been no demands for settlement made by plaintiff nor have there been settlement negotiations.  Defendants do not believe a settlement conference would be helpful.

26

## XIV.  Agreed Statement

The parties shall meet and confer to agree upon a neutral statement of the case which shall be read to prospective jurors at the beginning of jury selection.  The neutral statement of the case shall be filed with the court not later than Thursday, August 5, 2010.

## XV.  Separate Trial Of Issues

The court will bifurcate trial on the issues of liability and punitive damages.

## XVI.  Impartial Experts - Limitation Of Experts

Not Applicable.

## XVII.  Attorneys' Fees

Plaintiff seeks attorney's fees under 42 U.S.C. Section 1988.

Defendants are seeking costs and attorney's fees pursuant to 42 U.S.C. section 1988 should they prevail in this action.

## XVIII.  Further Trial Preparation

### A.  Final Witness List

The parties are ordered to file and serve their final list of witnesses by Thursday, August 5, 2010.  Additionally, at that time Plaintiffs shall disclose the order of witnesses so that Defendants will be prepared for cross-examination.

Except upon the showing set forth above in section VII, a party may not add witnesses to the final list of witnesses, or to any other updated witness list, who are not disclosed in this Order in Section VII.

### B.  Trial Briefs

The parties are directed to file and serve a Trial Brief by July 26, 2010.  Local Rule 16-285.  The parties need not include in the Trial Brief any issue that is adequately addressed in a motion in limine, or in an opposition brief to a motion in limine.  Any response to a Trial Brief shall be filed and served by August 5, 2010.

### C.  Duty of Counsel to Pre-Mark Exhibits

The parties are ordered to confer no later than June 25, 2010, for purposes of pre-marking and examining each other's exhibits.  All joint exhibits must be pre-marked with numbers preceded by the designation JT/-- (e.g., JT/1, JT/2).  Parties shall mark their separate exhibits according to any mutually agreed numbering system.

1.  Counsel shall create four (4) complete, legible sets of exhibits in binders as follows:

(a) Two sets of binders to be delivered to Courtroom Clerk Harold Nazaroff not later than Thursday, August 5, 2010, one for use by the Courtroom Clerk and the other for the court; and

(b)  One set for each counsel's own use.

If the parties desire, they may have a fifth set of binders to be used for the purposes of questioning witnesses.

2.  Counsel are to confer and make the following determination with respect to each proposed exhibit to be introduced into evidence, and to prepare separate indexes - one listing joint exhibits, and one listing each party's separate exhibits:

(a)  Duplicate exhibits, i.e., documents which both sides desire to introduce into evidence, shall be marked as a joint exhibit, and numbered as directed above.  Joint exhibits shall be listed on a separate index, and shall be admitted into evidence on the motion of any party, without further foundation.

(b)  As to exhibits that are not jointly offered, and to which there is no objection to introduction, those exhibits will likewise be appropriately marked, e.g., Plaintiffs' Exhibit 1 or Defendants' Exhibit A, and shall  be listed in the offering party's index in a column entitled "Admitted In Evidence."  Such exhibits will be admitted upon introduction and motion of the party, without further foundation.

(c)  Those exhibits to which the only objection is a lack of foundation shall be marked appropriately, e.g., Plaintiffs' Exhibit 2 - For Identification, or Defendants' Exhibit B - For Identification, and indexed in a column entitled "Objection Foundation."

(d) Remaining exhibits as to which there are objections to admissibility not solely based on a lack of foundation shall likewise be marked appropriately, e.g., Plaintiffs' Exhibit 3 - For Identification or Defendants' Exhibit C - For Identification, and indexed in a third column entitled "Other Objection" on the offering party's index.

3. Each separate index shall consist of the exhibit number or letter, a brief description of the exhibit, and the three columns outlined above, as demonstrated in the example below:

INDEX OF EXHIBITS

| EXHIBIT # | DESCRIPTION | ADMITTED IN EVIDENCE | OBJECTION FOUNDATION | OTHER OBJECTION |
|---|---|---|---|---|

Two sets of the completed joint index and the separate indexes shall be delivered to the Courtroom Clerk with the two sets of binders.

The court has no objection to counsel using copies. However, the copies must be legible. If any document is offered into evidence that is partially illegible, the court may sua sponte exclude it from evidence.

**D.  Discovery Documents**

By Thursday, August 5, 2010, each party shall file a list of all discovery documents the party intends to use at trial. The list shall indicate whether each discovery document has previously been lodged with the Clerk. If the discovery document has not been previously lodged, the party shall so lodge the document with the Courtroom Clerk by Thursday, August 5, 2010.

**E.  Motions In Limine Hearing and Briefing Schedule**

The hearing for motions in limine will be held on Monday, August 2, 2010, at 1:30 p.m. in Courtroom 2. In addition to addressing any filed motions in limine, at that time the court will also settle, to the extent possible, any other matter pertaining to the conduct of the trial.

Counsel are expected to be fully cognizant of the legal issues involved in the case by the date of the hearing for motions in limine.

29

By 4:00 p.m. on July 2, 2010, all motions in limine, with supporting points and authorities, shall be electronically filed and served.

By 4:00 p.m. on July 19, 2010, opposition to any motion in limine shall be filed and served.  If a party does not oppose a motion in limine, that party shall file and serve in the same manner a Statement of Non-Opposition to that motion in limine.

By 4:00 p.m. on July 26, 2010, any reply to an opposition shall be filed and served.  Because the court will need time to prepare for the hearing on August 2, 2010, the court is not inclined to consider late reply briefs.

**F.  Morning Conferences During Trial**

During the trial, it is the obligation of counsel to meet with the court each morning to advise the court and opposing counsel as to what documents are proposed to be put into evidence that have not previously been admitted by stipulation, court order, or otherwise ruled upon.  The court will rule on those documents, to the extent possible, prior to the commencement of trial each day out of the presence of the jury.  If the ruling depends upon the receipt of testimony, the court will rule as requested upon the receipt of such testimony.

The court shall consider any other legal matter at morning conferences as well.  The court does not wish to recess the trial to hear legal argument outside of the presence of the jury, and proper preparation by counsel will eliminate the need for that result.

**G.  Order Of Witnesses**

In order to make the trial operate efficiently and smoothly, each counsel has the continuing obligation to advise opposing counsel as to what witnesses he or she intends to call at each trial session.

**H.  Voir Dire**

The parties shall file proposed voir dire questions, if any, by Thursday, August 5, 2010.

Additionally, in order to aid the court in the proper voir dire examination of the

30

prospective jurors, counsel are directed to lodge with the court on the first morning of trial a list of the prospective witnesses they expect to call, omitting any witness listed in this Pretrial Order whom the party no longer intend to call.  This list shall contain the names of the each witness, and the business and/or home address of each witness.

**I.  Proposed Jury Instructions**

The parties shall file proposed jury instructions by Thursday, August 5, 2010, and shall transmit a copy of the proposed instructions in either Word or WordPerfect format by e-mail to awiorders@caed.uscourts.gov. .

All proposed jury instructions shall be in duplicate.  One set shall indicate the party proposing the instruction, with each instruction numbered or lettered, shall cite supporting authority, and shall include the customary "Given, Given as Modified, or Refused," showing the court's action with regard to each instruction.  The other set shall be an exact copy of the first set, but shall be a "clean" copy that does not contain the identification of the offering party, supporting authority, or reference to the court's disposition of the proposed instruction.

The parties are ordered to confer immediately after the hearing on motions in limine on August 2, 2010, to determine which instructions they agree should be given.  As soon as possible thereafter, the parties shall submit a list of joint, unopposed instructions.  As to those instructions to which the parties dispute, the court will conduct its jury instruction conference during trial at a convenient time.

**J.  Proposed Verdict Form**

Each party shall file a proposed verdict form by Thursday, August 5, 2010.

**K.  Use Of Recorded Video Display (Videotape, DVD, etc.)**

Any party wishing to use any form of recorded video or audio display for any purpose during trial shall lodge a copy of the such display with the Courtroom Clerk on or before Thursday, August 5, 2010.  If a written transcript of audible words on the display is available, the court requests that the transcript be lodged with the court, solely for the aid of the court.

**L.  Use of Other Digital Display Media**

If counsel intends to use a laptop computer for presentation of evidence, they shall contact the courtroom deputy clerk at least one week prior to trial.  The courtroom deputy clerk will then arrange a time for counsel to bring the laptop to the courtroom, and meet with a representative of the Information and Technology Department and receive a brief training session on how counsel's equipment interacts with the court's audio/visual equipment.

**M.  Agreed Summary Of The Case**

The parties shall lodge with the Courtroom Clerk a joint agreed summary of the case, briefly outlining the positions of the parties by Thursday, August 5, 2010.  The summary will be read to the jury panel at the outset of the trial solely for the purposes of assisting in the jury selection process.  The contents of the summary shall not be deemed to be evidence or an admission or stipulation by a party as to any contested fact or issue.

**XIX.  Objections to Pretrial Order**

Any party may, within ten (10) calendar days after the date of service of this order, file and serve written objections to any of the provisions of this order.  Local Rule 16-283.  Such objection shall specify the requested corrections, additions or deletions.

**XX.  Rules of Conduct During Trial**

A.  General Rules

1.  All participants in the trial shall conduct themselves in a civil manner.  There shall be no hostile interchanges between any of the participants.

2.  All oral presentations shall be made from the podium, unless otherwise permitted by the court.

3.  Sidebar conferences are discouraged.  Legal arguments or discussion of issues outside the presence of the jury should be done during recesses.

4.  Counsel shall advise their respective clients and witnesses not to discuss any aspect of the case in the common areas of the courthouse accessible to the jurors, such as

the lobby, the elevators, the hallways and the cafeteria.

B.  Jury Selection

1.  The court will conduct voir dire to be supplemented by any written questions submitted by counsel prior to trial and after the court has concluded its questioning of the jury panel.  In some circumstances, the court may allow brief direct questioning by counsel.

C.  Opening Statements

1.  Counsel may use visual aids in presenting the opening statement.  However, any proposed visual aids shall be shown to opposing counsel before opening statement.

D.  Case in Chief

1.  Counsel shall have his/her witnesses readily available to testify so that there are no delays in the presentation of evidence to the trier of fact.

2.  At the close of each trial day, counsel shall disclose his/her anticipated witnesses and order of presentation for the next day, so that any scheduling or evidentiary issues may be raised at that time.

E.  Witnesses

1.  Before approaching a witness, counsel shall secure leave of court to approach the witness.

2.  Before approaching a witness with a writing, counsel shall first show the writing to opposing counsel.

F.  Exhibits

1.  All exhibits shall be marked and identified in accordance with the instructions in the Pretrial Order.

2.  An exhibit shall not be published to the jury until it has been admitted into evidence and counsel has secured leave of court to publish the exhibit.

3.  The court usually will conduct an on the record review of the exhibits that have

been admitted in evidence at the conclusion of each party's case in chief and after each party has rested its entire case.

### G.  Objections

1.  No speaking objections or arguments are permitted in the presence of the jury. Counsel shall state the specific legal ground(s) for the objection, and the court will rule based upon the ground(s) stated.  The court will permit counsel to argue the matter at the next recess.

2.  The court will not assume that any objection made also implies with it a motion to strike an answer that has been given.  Therefore, counsel who has made an objection, and who also wishes to have an answer stricken, shall also specifically move to strike the answer.

### H.  Closing Argument

1.  Counsel may use visual aids in presenting the closing argument.  However, any proposed visual aids shall be shown to opposing counsel before closing argument.

FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY BE GROUNDS FOR THE IMPOSITION OF SANCTIONS ON ANY AND ALL COUNSEL AS WELL AS ON ANY PARTY WHO CAUSES NON-COMPLIANCE WITH THIS ORDER

COURTROOM THREE

RULES OF CONDUCT DURING TRIAL

A.  General Rules

    1.  All participants in the trial shall conduct themselves in a civil manner.  There shall be no hostile interchanges between any of the participants.

    2.  All oral presentations shall be made from the podium, unless otherwise permitted by the court.

    3.  Sidebar conferences are discouraged.  Legal arguments or discussion of issues outside the presence of the jury should be done during recesses.

    4.  Counsel shall advise their respective clients and witnesses not to discuss any aspect of the case in the common areas of the courthouse accessible to the jurors, such as the lobby, the elevators, the hallways and the cafeteria.

B.  Jury Selection

    1.  The court will conduct voir dire to be supplemented by any written questions submitted by counsel prior to trial and after the court has concluded its questioning of the jury panel.  In some circumstances, the court may allow brief direct questioning by counsel.

C.  Opening Statements

     1.  Counsel may use visual aids in presenting the opening statement.  However, any proposed visual aids shall be shown to opposing counsel before opening statement.

D.  Case in Chief

     1.  Counsel shall have his/her witnesses readily available to testify so that there are no delays in the presentation of evidence to the trier of fact.

     2.  At the close of each trial day, counsel shall disclose his/her anticipated witnesses and order of presentation for the next day, so that any scheduling or evidentiary issues may be raised at that time.

E.  Witnesses

     1.  Before approaching a witness, counsel shall secure leave of court to approach the witness.

     2.  Before approaching a witness with a writing, counsel shall first show the writing to opposing counsel.

F.  Exhibits

     1.  All exhibits shall be marked and identified in accordance with the instructions in the Pretrial Order.

1    2.  An exhibit shall not be published to the jury until it has been admitted into

2  evidence and counsel has secured leave of court to publish the exhibit.

3

4    3.  The court usually will conduct an on the record review of the exhibits that have

5  been admitted in evidence at the conclusion of each party's case in chief and after each

6  party has rested its entire case.

7

8  G.  Objections

9

10    1.  No speaking objections or arguments are permitted in the presence of the jury.

11  Counsel shall state the specific legal ground(s) for the objection, and the court will rule

12  based upon the ground(s) stated.  The court will permit counsel to argue the matter at the

13  next recess.

14

15    2.  The court will not assume that any objection made also implies with it a motion

16  to strike an answer that has been given.  Therefore, counsel who has made an objection,

17  and who also wishes to have an answer stricken, shall also specifically move to strike the

18  answer.

19

20  H.  Closing Argument

21

22    1.  Counsel may use visual aids in presenting the closing argument.  However, any

23  proposed visual aids shall be shown to opposing counsel before closing argument.

24

25  IT IS SO ORDERED.

26  **Dated:    June 14, 2010           _____/s/ Anthony W. Ishii_____**
                                        CHIEF UNITED STATES DISTRICT JUDGE

27

28                                      37